{JOHN CLIPPINGER, Esq. late Sheriff of Cumberland county, *against* ROBERT MILLER, Assignee of LYON and WEB-STER.

The revival of a judgment by an amicable *Scire Facias Port Annum et diem* creates a lien upon the real property of the defendant, acquired after the entry of the original judgment.

A *scire facias* continues the lien of a judgment upon land, although the occupiers, who are lessees from year to year of the defendant, have not had the writ served upon them.

THE facts of this case were presented to the court of common pleas of Cumberland county, in the shape of a special verdict, which was removed to this court by the defendant below by a writ of error.

*Robert Miller*, assigneee of  
    *Lyon* and *Webster*,  
          v.          In the court of common pleas of Cum-  
*John Clippinger*, Esq. high     berland county.  
    sheriff of the county of  
    Cumberland.

The following facts are agreed on by the parties to be considered in the nature of a special verdict; either party to be at liberty to take a writ of error within twenty days after judgment may be rendered, but not afterwards. 22d. September, 1804, *Lyon* v. *Webster* obtained judgment against *John Creigh* Jun. and *John Creigh*, Sen. in the circuit court of Cumberland county, No. 8. of March term, 1804, for five hundred and thirty-two dollars and eleven cents. On the record of this judgment, the following entry was made, "*Eait Amicable scire facias*, No. 57, to August term, 1817."

1st. May, 1817. The following agreement was signed by *A. Carothers*, Esq. as attorney for Doctor *John Creigh*, and filed of record in the court of common pleas of Cumberland county: "*J. S. Webster*, surviving partner of the late firm of *Lyon & Webster* v. Doctor *John Creigh*, surviving *John Creigh*, Esq. deceased. Amicable *scire facias P. A. et D.* to revive judgment. *Lyon & Webster* v. *John Creigh*, Jr. and *John Creigh*, Sen.

"I, as attorney for the defendant, agree to appear to this amicable *scire facias* as of August term, 1817.     (Signed)   *A. Carothers*.

"1st May, 1817."

In the appearance docket of the court of common pleas of Cumberland county, to August term, 1817, are the following entries:

(John Clippinger, Esq. late sheriff of Cumberland county, *v.* Robert Miller, assignee of Lyon and Webster.)

*John S. Webster*, surviving partner of the late firm of *Lyon & Webster*,

v.

Doctor *John Creigh*, surv. *John Creigh*, Esq. dec.

"No. 57, August term, 1817.

"*Am. sci. fa. P. A. et D.* to revive the judgment *Lyon & Webster* against *J. Creigh*, Jun. and *J. Creigh*, Sen. May 1st, 1817, per agreement filed, as narr."

"Judgment."

"Origl. No. 8, March, 1804, circuit court."

"Eait *Am. sci. fa.* No. 108, August term, 1822."

6th June, 1822, the following agreement was signed by Doctor *John Creigh*, and filed of record in the common pleas of Cumberland county, 7th June, 1822:

"*Lyon & Webster*, v. *John Creigh*, Esq. Amicable *scire facias* to revive judgment in the court of common pleas of Cumberland county. I appear to the above *Am. sci. fa.* to revive judgment, and confess judgment thereon to the plaintiff, deducting the following payments, viz: two hundred dollars on 7th March, 1818, one hundred dollars on 1st August, 1818, one hundred dollars on the 10th August, 1818, and two hundred dollars on 28th April, 1820.

Carlisle, 6th June, 1822.      *John Creigh*, [SEAL.]

Attest, *Geo. A. Lyon.*"

Under the authority of this last agreement, the following entry was made on the docket:

*Lyon & Webster*

v.

*John Creigh*, Esq.

"No. 108, August term, 1822.

"*Am. sci. fa.* to revive judgment in the court of common pleas of Cumberland county, 6th June, 1822. The defendant appears to this *Am. sci. fa.* and confesses judgment thereon to the plaintiff, deducting the following payments, to wit: two hundred dollars, March 7th, 1818; one hundred dollars, 1st August, 1818; one hundred dollars, 10th August, 1818; two hundred dollars on the 28th April, 1820, as per agreement filed.—Entered 7th June, 1822. Origl. 57, August term, 1817.

"Judgment."

"Eait *Am. sci. fa.* No. 20, August term, 1827."

28th April, 1827, *Doctor Creigh* signed the following agreement:

*Lyon & Webster*

v.

*John Creigh*, Esq.

In the court of common pleas of Cumberland county. *Am. sci. fa.* to revive judgment, No. 108, of August term, 1822. I appear to the above *Am. sci. fa.* and confess judgment thereon in favour of plaintiff, as of this date. Witness my hand and seal, the 28th day of April, A. D. 1827.      (Signed,)      *John Creigh*, [SEAL.]"

The docket entry of the above is as follows, viz:

*Lyon & Webster*

v.

*John Creigh*, Esq.

No. 20, August term, 1827.

In the court of common pleas of Cumberland county, *Am. sci. fa.* to revive judgment. The defendant, by his agreement in writing, dated 28th April, 1827,

9

(John Clippinger, Esq. late sheriff of Cumberland county, *v.* Robert Miller, assignee of Lyon and Webster.)

appears to the above *Am. sci. fa.* and confesses judgment to the plaintiff. (Agreement filed as narr.)

Entered 30th April, 1827.—Origl. 108, August term, 1822.

"Judgment."

At the time of the entry of the judgments in favour of *Lyon & Webster,* v. *John Creigh,* Jun. and *John Creigh,* Sen. on the 22d September, 1804, *John Creigh,* Jun. and *John Creigh* Sen. each had real estate amply sufficient to pay the judgment, which estates were then unincumbered. *John Creigh,* Jun. yet holds the same estate he held on the 22d September, 1804, the time *Lyon & Webster's* judgment was entered, and *John Creigh,* Sen. held his until his death, and on the 1st of May, 1817, *John Creigh,* Jun. was residing in his own house, in Landisburg, and the estate which he owned at that time, which now lies in Cumberland county, was occupied and possessed by tenants.

In 1814, Doctor *John Creigh* and *Andrew Mateer* purchased a tract of land in Silver Spring township, Cumberland county, for something above twelve thousand dollars, containing two hundred and thirty acres, more or less, which they held as tenants in common, until March, 1828, when it was sold by sheriff *Clippinger,* as hereinafter stated. Between 1812 and 1814, Doctor *John Creigh,* became entitled, as one of the heirs of *John Creigh,* Esq. deceased, to the one fifth of a house and lot in Carlisle; one fifth of a piece of land in South Middleton township, containing ninety-two acres, about two miles from Carlisle; the one fifth of another piece of land, about one mile from Carlisle; and the one fifth of an out lot of five acres, which he held until sold last year by sheriff *Clippinger,* as hereafter stated. Between the years 1800 and 1815, Doctor *John Creigh* acquired the following property in that part of Cumberland county which now composes the county of Perry, to wit: a lot of ground in Landisburg, with a log house on it; a brick house and lot of ground in Landisburg; one fifth of a tract of land, containing about three hundred and seventy acres, in Tyrone township, all of which he yet holds, though incumbered by judgments against him in Perry county, to more than their value, which judgments were entered since the 16th September, 1823, the time of the judgment in favour of the commonwealth for use, &c. v. *Andrew Mateer, John Creigh,* and *Henry Quigley.*

16th September, 1823, judgment was entered against *Andrew Mateer, John Creigh,* and *Henry Quigley,* in the common pleas of Cumberland county, at the suit of the commonwealth of Pennsylvania, for the penalty of a bond given by defendants to the commonwealth, by direction of the court of common pleas of Cumberland county, to secure the repayments of moneys received by *A. Mateer* and *John Creigh,* as administrators *pendente lite* of *John Huston,* deceased.

(John Clippinger, Esq. late sheriff of Cumberland county, *v.* Robert Miller, assignee of Lyon and Webster.)

A *sci. fa.* issued on this judgment, in favour of *Huston's* executors, on the 11th April, 1827, a verdict was given in the circuit court of Cumberland county, against *A. Mateer, John Criegh* and *Henry Quigley,* executors, for fifteen thousand six hundred dollars. On this *sci. fa,* and on the 3d of November, 1827, judgment was rendered on said verdict, by the supreme court against *John Creigh* and *Andrew Mateer,* generally, and with leave to take out execution against the lands of *Henry Quigley,*which were bound by the judgment entered on the 16th September, 1823.

On 21st March, 1828, *John Clippinger,* Esq. sheriff of Cumberland county, sold the following property on a *vend. exps.* issued out of the circuit court of said county, at the suit of *Huston's* executors v. *John Creigh* and *Andrew Mateer,* No. 2, of March term, 1828, viz: A tract of land in Silver Spring township, Cumberland county, containing two hundred and thirty acres, sold as the property of *John Creigh* and *Andrew Mateer* to *William Ramsey,* Esq. for four thousand dollars. A tract of land, containing one hundred and twenty acres, sold as the property of *Andrew Mateer* to *William Ramsey,* Esq. for two thousand dollars. A tract of land, containing nineteen acres, with a forge seat, sold as the property of *A. Mateer,* to *William Ramsey,* Esq. for one thousand dollars. A tract of land, containing two hundred and fifty-four acres, sold as the property of *A. Mateer* to *William Ramsey,* Esq. for three hundred and fifty dollars. A lot of ground sold as the property of *A. Mateer,* to *William Ramsey,* Esq. for seventy dollars. Two lots of ground, sold as the property of *A. Mateer* to *William Ramsey,* Esq. for one hundred dollars. A lot of ground, sold as the property of *A. Mateer* to *William Ramsey,* Esq. for fifty dollars. The one fifth part of a house and lot in Carlisle, sold as the property of Doctor *John Creigh* to *John D. Creigh,* Esq. for three hundred and fifty dollars. The one fifth part of fifty acres of land within a mile of Carlisle, sold as the property of Doctor *John Creigh* to *John D. Creigh,* Esq. for one hundred and fifty-one dollars. The one fifth part of a five acre lot, sold as the property of Doctor *John Creigh* to *John D. Creigh,* Esq. for thirty dollars.

If upon the within and foregoing statement of facts, the court shall be of opinion that *Huston's* executors, or those claiming under them, are entitled to receive the proceeds of the sales made by sheriff *Clippinger* of Doctor *Creigh's* interest in the properties mentioned, to the exclusion of *Lyon & Webster,* or those claiming under them, then judgment is to be entered for the defendant. But if the court should be of opinion that the judgment in favour of *Lyon & Webster* is entitled to a preference, and that the balance due thereon should be paid out of the moneys arising from the sales of Doctor *Creigh's* interests in said properties so as aforesaid, made by sheriff *Clippinger,* then judgment is to be entered in favour of the

(John Clippinger, Esq. late sheriff of Cumberland county, *v.* Robert
      Miller, assignee of Lyon and Webster.)

plaintiff, for four hundred and one dollars and twenty-three cents,
with interest from the 30th September, 1828; being the balance
due on *Lyon & Webster's* judgment, after deducting three hundred
and fifty dollars paid by sheriff *Clippinger*, in April, 1828, out of the
moneys arising from the sales made of Doctor *Creigh's* property to
*John D. Creigh*, Esq. as within stated.

After argument, the court of common pleas, (*Reed* president,)
gave judgment for the plaintiff, which was assigned for error in
this court.

*Watts* for plaintiff in error.—Three propositions which arise out
of the facts in this case, are contended for by the plaintiff in error:

1st. That the revival of a judgment by an *Amicable scire facias*
*P. A. et D.* does not create a lien upon the property of the defend-
ant, acquired after the original judgment was entered.

2d. That no *scire facias* either creates or continues a lien upon
land, unless the terre tenants or persons occupying the lands, are
made parties to the same, or have the writ served upon them.

3d. If the plaintiffs are entitled to the moneys now in dispute,
*Huston's* administrators are entitled to an assignment of their judg-
ment, which is a lien upon lands, which the judgment of *Huston's*
administrator's is not.

In order to understand the consequences and effects of a judgment
upon a writ of *scire facias*, it is necessary to know what it contains,
and what it demands. It contains a recital, that a judgment had
been obtained at a certain term, which yet remains unsatisfied, and
demands that the defendant shall appear and shew cause why
execution should not issue; the judgment can be for nothing but
what the writ demands; it is " the sentence of the law, pronounced
by the court upon matters contained in the record." It does not
partake of the nature of an original action, in regard to the exten-
sion of the lien of the original judgment. When money is loaned
by one man to another, and the lender takes a judgment for the
amount, he does it upon the faith of the property which the bor-
rower has at the time; and policy does not require that the
security should be increased. Although it has been said by our
judges, that a *scire facias* partakes of the nature of an original
action, for certain purposes; yet if a judgment upon it embraces in
its lien land not originally bound, there is no particular in which it
differs at all. In the case of *Calhoun* v. *Snyder*, 6 *Bin.* 135, *Yeates*,
justice, speaking of judgment, says, "The lien attaches at the
moment of entry, and I can have no idea of its shutting at one
period and opening at another, so as to embrace, of itself merely,
property not originally bound. Its effects are immediate, and must
be known and ascertained, when the judgment is given, and cannot
depend upon subsequent events, unless it has been so provided by
positive law." And in the case of *Fries* v. *Watson*, 5 *Serg. & Rawle*,

(John Clippinger, Esq. late sheriff of Cumberland county, *v.* Robert Miller, assignee of Lyon and Webster.)

220, *Chief Justice Tilghman* says, " I know that in strictness, a *scire facias* is not an action, but a demand of execution:" and when speaking of its object, he says, it is " the obtaining the fruits of the original judgment." "The effects of a *scire facias* is to *enforce a lien.*" *Morton* v. *Croghan*, 20 *Johns. Rep.* 106. 7 *Serg. & Rawle.* 328. 1 *Peter's Rep.* 446–9.

The third section of the act of, 4th April, 1798, seems to be conclusive of this point. It is alone by the authority of this act, that the lien of a judgment can be continued: and it provides that the *scire facias* shall be served upon " the terre tenants or persons occupying the *real estate bound by the judgment*, and on the defendant: the whole act provides for the *continuance* of a lien upon land, already bound; the legislature never seeming to contemplate that any other than the lands originally bound, should be embraced within the operation of the writ of *scire facias.*

The act of assembly provides that " all such writs of *scire facias*, shall be served on the terre tenants or persons occupying the real estate bound by the judgment, and also, where he or they can be found, on the defendant or defendants." In this case it is expressly found that the lands, out of which the money now in dispute was made, was in the possession of tenants, and that the writs of *scire facias* were not served upon them. 2 *Saund.* 7 *n.* 9, is the authority cited in the case of *Cahoon* v. *Hollenbach*, for the position, that occupiers are not terre tenants. In England, I admit it is so; but our act of assembly is in its terms positive; and if those terms be disregarded, the proceeding is ineffectual.

*Huston's* administrators and *Lyon* and *Webster*, are both creditors of *John Creigh;* we have but one fund out of which our debt can be paid; they have two, and ask, in this suit, to take the only fund which can be appropriated to the payment of our debt. If the two first points should be against us, the court will direct their judgment to be assigned to us, that we may be enabled to collect our debt out of the fund upon which we have now no lien.

*Lyon* and *Carothers* for defendant in error.—The lien of a judgment obtained upon a *scire facias post annum et diem*, is not limited to the land bound by the original judgment: to authorize such a limitation of the lien, the *scire facias* must be special, praying execution only of those particular lands, as in *scire facias* on a mortgage; or the judgment of the court must be specially so entered. Where that is not the case, the judgment entered must be considered a new general judgment, with all the incidents and qualities of a judgment obtained in action of debt on a bond. A defendant may plead to a *scire facias*, and make as full defence as he could upon a summons; it has therefore been considered an action in law; and in a late case, *Allen* v. *Reesor*, 16 *Serg. & Rawle*, 14, the court decided that a *scire facias* on a recognizance in the

orphan's court, was sustainable as being substantially an action of debt. There is nothing in the opinion of judge *Yeates,* in 6 *Bin.* 135, that militates against the doctrine contended for by the plaintiffs; we admit that a judgment cannot shut at one period, and open at another so as to embrace of *itself merely,* property not originally bound; but we contend that through the medium of an amicable suit of *scire facias* founded on the original judgment, and a new judgment entered on that in 1817, the plaintiff obtained a lien, which did embrace all the land which the defendant had at that time. It cannot be pretended that a *fi. fa.* partakes at all of the nature of an action; nor can it be denied that the object of a *Testatum fi. fa.* is to obtain the points of the judgment on which it issued; yet by these writs a plaintiff may acquire a lien on land not bound by the original judgments. *Cowden* v. *Brady,* 8 *Serg. & Rawle,* 505.- There would be no principle of law violated, or rule of equity abridged, by attaching to a judgment on a *scire facias,* all the consequences of a judgment upon an original action. On the contrary, such a decision would be in exact accordance with the spirit and letter of our acts of assembly, which direct that " judgments shall bind the real estate of defendants from their dates," and that " all the goods and chattels, lands and tenements of debtors, shall be subject to execution." The doctrine contended for by the plaintiff in error, is not only contrary to every sound rule of construction, but it is subversive of the universal practice of our courts; such a doctrine would involve sheriffs in inextricable difficulties in the distribution of the proceeds of real estates of defendants, when different properties of the same defendant are sold.

On the second point it need only be remarked, that in the case of *Cahoon* v. *Hollenbach,* 16 *Serg. & Rawle,* 432, the third section of the act of the 4th April, 1798, limiting the lien of judgments, was fairly before the court, and by the decision made in that case, a construction has been given to that section which is at once safe and convenient, and in perfect accordance with the invariable practice and understanding of the profession. If the letter of the act were to be complied with, according to the common understanding of the word " occupants," every sub-tenant from year to year, or at sufferance, of every room in the house or cabin on the land, must be summoned. The defendant and those holding the fee under him, are the only persons whose rights could be affected by the want of notice; and they alone, says chief justice *Gibson,* are entitled to notice.

On the third point, it need only be remarked, that the principle of substitution contended for by the plaintiff in error, cannot apply to this case. If there were no other creditors of *Dr. Creigh* but the parties to this cause, the rule would apply; but there are other creditors who are not parties to this issue, and who would be

(John Clippinger, Esq. late sheriff of Cumberland county, *v.* Robert Miller, assignee of Lyon and Webster.)

affected by such substitution. If the creditors in both counties have the same equity, the law must decide between them.

*Ramsay* in reply.—The *scire facias* of 1817 specifies no sum, and the *scire facias* of 1822, is to revive the judgment of 1817, and mentions no sum to be due by the defendant to the plaintiffs. If, therefore, it should be contended that the irregular judgment of 1817, was of itself a good judgment, without relation to the judgment of 1804, but is in the nature of an original action, it is void for uncertainty, and the court cannot tell how much was recovered in that suit by the record itself. And if it is a *scire facias* to revive the judgment of 1804, and *continue* its lien, it cannot embrace subsequently acquired property. *Philadelphia Bank* v. *Craft,* 16 *Serg. & Rawle,* 348.

The opinion of the court was delivered by

ROGERS, J.—Two questions arise in the case stated. First, whether the revival of a judgment, by *Amicable scire facias post annum et diem,* creates a lien upon the property of the defendant, acquired after the original judgment.

And, secondly, whether a *scire facias* continues the lien upon the land, the terre tenants not having been made parties, no writ having been served upon them.

The first question has been virtually decided in *Berryhill* v. *Wells,* 5 *Bin.* 56, and in *Fries* v. *Watson,* 5 *Serg. & Rawle,* 220. In some respects we have departed from the English law, and the difference has arisen from the construction of an act of assembly, making interest an incident to a judgment. The cases referred to, go on the ground, that a judgment on the *scire facias* is not a mere revival of the original judgment, but partakes of the nature of a new judgment, and the court assimilates it to the case of a judgment rendered in an action of debt on the original judgment. We cannot perceive any good reason why a difference in the remedies should make any difference in the right. If the plaintiff had brought an action of debt, instead of a *scire facias,* the land would have been bound. And we believe a judgment on the *scire facias* places the plaintiff on precisely the same footing. In strictness it is true, a *scire facias* is not an action, but the object of the two remedies is the same—the obtaining the fruits of the original judgment. It is in the nature of an original action; and to say, that as to the recovery of interest, it should be considered as a judgment in an original action, but not so in other respects, would be introducing a distinction, attended, as far as we can perceive, with no beneficial results.

By tenants, is meant the owners of the fee-simple, and by occupiers, those who come in under them. 2 *Saund.* 7 *n.* 9. And in this sense, the terms are used in the third section of the act of 1798.

(John Clippinger, Esq. late sheriff of Cumberland county,· *v.* Robert Miller, assignee of Lyon and Webster.)

When the tenant in fee is known, and within reach of the process of the court, the legislature intended he should have notice: on him the *scire facias* should be served, for he, and he only, is entitled to notice, who will be prejudiced by the judgment. The act of assembly is in the alternative. The *scire facias* must be served on the terre tenants or occupiers of the land; by which expressions, I do not understand the legislature to mean, that terre tenants and occupiers are one and the same, but as intending to provide for the service of notice, on the persons occupying the land, where the owner of the fee simple is unknown, or not within reach of the process of the court. The tenants do not make any complaint of want of notice; if their rights were affected, they would be entitled to a hearing; but the judgment would cease to be a lien, only so far as their interest was concerned. A contrary exposition of this act, would be attended with great inconvenience; for if you were obliged to serve notice, at the risk of losing your lien, on all the occupiers of land bound by a judgment, (which is a general lien on all the real property a man possesses,) it would be extremely trouble-some and very expensive. And in accordance with this opinion, has been the universal understanding. It has not been considered necessary, where there has been no transfer of the property by the defendant, to bring in any person but the defendant himself. When there has been an alienation or sale of the property, it is right that the party to be affected should have an opportunity of making defence, *pro interesse suo;* for preventing the risk and inconvenience to purchasers of real estate, seems to have been the principal object of the act of the 4th April, 1798.

I cannot perceive any similarity between this case, and the case of the *Philadelphia Bank* v. *Craft,* 16 *Sergt. & Rawle,* 348. There it was contended, that it was a final judgment, without any sum being ascertained, either directly or by reference. We did not mean to interfere with judgments which referred to a sum ascertained and fixed. By applying the maxim, *id certum est, quod certum reddi potest,* there is no difficulty in ascertaining the amount found in the judgment on the *scire facias.*

The application to the court to be substituted, &c. we think premature, as the persons to be affected by it, are no parties to this proceeding.

Judgment affirmed.